**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Kenny, et al., | ) Civil Action No. 2:16-cv-2794-MBS |
|                       Plaintiffs, | ) **ORDER AND OPINION** |
| v. | ) |
| Wilson, et al., | ) |
|                       Defendants. | ) |

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 11, 2016, Niya Kenny; Taurean Nesmith; Girls Rock Charleston, Inc.[1] ("Girls Rock"); D.S.; and S.P. ("Plaintiffs"), on behalf of themselves and those similarly situated, filed suit against South Carolina Attorney General Alan Wilson ("Defendant")[2] challenging the Disturbing Schools Law, codified at S.C. Code Ann. § 16-17-420; and the Disorderly Conduct Law, codified at S.C. Code Ann. § 16-17-530. ECF No. 1. Plaintiffs challenge the Disturbing Schools Law as unconstitutional on its face and challenge the Disorderly Conduct Law as unconstitutional as applied to K-12 public school children in South Carolina. Id.

In their complaint, Plaintiffs seek 1) a declaratory judgment stating that the Disturbing Schools and Disorderly Conduct Laws violate the Fourteenth Amendment; 2) a preliminary and permanent injunction enjoining Defendant from enforcing both statutes; and 3) an order

---

[1] Defendant refers to this organization as "Girls Rock," which was the name of the organization at the time of the filing of this suit. Since the filing of the suit, the organization changed its name to the Carolina Youth Action Project. ECF No. 133. The court will refer to the organization as "Girls Rock," as that is the name used in the complaint.

[2] Plaintiffs originally filed this action against Defendant Alan Wilson and numerous state law enforcement officials. The action was stayed against the state law enforcement Defendants by consent order. ECF No. 131. Defendant Wilson, however, remains part of the action.

1

enjoining Defendant from considering and/or retaining records of individuals prosecuted or charged under the Disturbing Schools and Disorderly Conduct Laws, "except as would be permissible following expungement . . . ." ECF No. 167 at 2. Defendant, as well as four state law enforcement officials, filed a motion to dismiss on September 30, 2016, asserting, among other things, that Plaintiffs lacked Article III standing. ECF No. 28. The Honorable C. Weston Houck[3] granted the motion to dismiss on March 3, 2017. ECF No. 91. Plaintiffs appealed the district court's decision to the Court of Appeals for the Fourth Circuit. On March 15, 2018, the Fourth Circuit vacated the decision of the district court and remanded the case for further proceedings, finding that Plaintiffs S.P., D.S., and Nesmith had shown that they had standing. ECF No. 102. Defendant, as well as four state law enforcement officials, filed a renewed motion to dismiss shortly thereafter. ECF No. 117. That motion was withdrawn by consent on May 15, 2018. ECF No. 131.

The Disturbing Schools Law was amended on May 17, 2018. ECF No. 132-1. While Plaintiffs concede that the amendments "address Plaintiffs' request that this Court enjoin enforcement of S.C. Code § 16-17-420 . . . and also resolve the [enforcement] claims of Niya Kenny and Taurean Nesmith . . . the legislative amendments did not address Plaintiffs' request for relief from the retention of records related to . . . the Disturbing Schools Law or Plaintiffs' claims related to the Disorderly Conduct statute." ECF No. 167 at 3. On February 19, 2019, Plaintiffs moved to amend their complaint to add D.D., a current South Carolina public school student charged under the old Disturbing Schools Law, as a class representative. Plaintiffs also maintained that D.S. is an adequate class representative. The court granted leave to amend, and

---

[3] Following Judge Houck's passing, this matter was reassigned to the undersigned on April 6, 2018. ECF No. 104.

Plaintiffs filed an amended complaint adding D.D. as a Plaintiff on May 16, 2019. ECF No. 157. Plaintiffs' original complaint was otherwise unchanged.

On June 6, 2019, Defendant filed a motion to dismiss the amended complaint. ECF No. 165. Defendant raises the following grounds for dismissal: 1) the claims of Plaintiffs Kenny and Nesmith are resolved, moot, and the two individuals lack standing; 2) Plaintiff D.S.'s claims are moot because she is no longer in school and the charges against her are dismissed; 3) Girls Rock lacks standing; 4) the claims of sentenced Plaintiffs are barred by the doctrine of res judicata, the Rooker-Feldman[4] doctrine, and the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994); 5) Plaintiffs' claims for prospective relief as to the Disturbing Schools Law must be dismissed; 6) the Disturbing Schools and Disorderly Conduct Laws are constitutional; and 7) the class action allegations should be stricken. Id. Plaintiffs filed a response in opposition on June 20, 2019. ECF No. 167. Plaintiffs assert that 1) Defendant raises no new issues and re-assertion of previously litigated issues is barred by the mandate rule; 2) Girls Rock has standing; 3) D.S.'s claims relate back to the filing of the suit and are therefore not moot; 4) the class allegations are properly pleaded; 5) the doctrine of res judicata, the Rooker-Feldman doctrine, and Heck do not apply here; and 6) constitutionality claims were addressed by the Fourth Circuit and are barred from re-litigation. ECF No. 167. A hearing was held on Defendant's motion on December 4, 2019. ECF No. 175.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party can move to dismiss a case if the other party fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To

---

[4] Rooker v. Fidelity Trust, 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

survive a motion to dismiss, a complaint must state sufficient factual information that is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Allegations in complaints are generally "taken as true." Id. at 556. If a complaint contains well-pleaded allegations with factual background, the court is to assume that the facts are accurate and then determine if the court should grant relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)).

### III. ANALYSIS AND DISCUSSION

#### A. The Mandate Rule

Plaintiffs contend that the mandate rule bars the court from considering Defendant's motion with respect to Girls Rock's standing. Plaintiffs argue that "the standing of [Girls Rock] was fully briefed before both the District and Appellate Courts . . . .[A]fter reviewing this briefing . . . the Court of Appeals vacated the District Court decision." ECF No. 167 at 6. Defendant asserts that the Fourth Circuit left the question of standing as to Girls Rock up to this court.

The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigating of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). "The mandate rule in fact serves the interest of finality in litigation . . . . Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . hardworking district and appellate judges." Doe v. Chao, 511 F.3d 461, 465–66 (4th Cir. 2007)(internal quotation marks omitted).

The Fourth Circuit has held that "a district court must, except in rare circumstances, implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces." Bell, 5 F.3d at 66–67. "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" Id. (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)).

In vacating Judge Houck's ruling, the Fourth Circuit found that Plaintiffs S.P., D.S., and Nesmith had standing, and then concluded that "[b]ecause S.P., D.S., and Nesmith satisfy the injury-in-fact requirement, we need not decide whether Kenny or Girls Rock have also established an injury in fact . . . . [W]hether the claims alleged by [Kenny and Girls Rock] survive further analysis is a matter we leave to the district court." Kenny v. Wilson, 885 F.3d 280, 291 (2018). The court finds that the Fourth Circuit's standing determination applied only to Plaintiffs S.P., D.S., and Nesmith; the holding was narrow, and the language in the Fourth Circuit's opinion does not indicate that it made a finding as to Girls Rock's standing. The court will independently evaluate Girls Rock's standing.

**B. <u>Claims as to the Disturbing Schools Law</u>**

Plaintiffs Kenny and Nesmith sought injunctive relief from enforcement of the Disturbing Schools Law. ECF No. 167 at 2. The parties agree that Kenny and Nesmith's claims, as well as all other claims for injunctive relief as to future enforcement of the Disturbing Schools Law, are moot due to the modification of the Disturbing Schools Law. ECF No. 167 at 4. However, Plaintiffs still seek injunctive relief, i.e., expungement of any portion of their criminal records referencing the old Disturbing Schools Law. Defendant argued at the hearing and in

supplemental briefing that the court is without the authority to order expungement.[5] ECF No. 179. Defendant argues that Plaintiffs are required to apply individually to have their records expunged. Defendant also asserts that federal courts may order expungement only in extreme circumstances that are not present here. Id. at 4.

As a general rule,"'once a plaintiff has established the violation of a constitutional or statutory right in the civil rights area . . . court[s] ha[ve] broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs.'" N. Carolina State Conference of NAACP v. McCrory, 831 F.3d 204, 239 (4th Cir. 2016)(quoting Smith v. Town of Clarkton, 682 F.2d 1055, 1068 (4th Cir. 1982)). The power of federal courts to order remedies is not unlimited. For instance, federal courts often decline to consider motions for expungement when expungement is sought for purely equitable reasons -- ordinarily, situations where parties do not challenge the validity of past convictions, but rather assert that their past convictions impose hardships upon them in later life -- finding that they do not have ancillary jurisdiction to consider such motions. See, e.g., United States v. Mitchell, 683 F. Supp. 2d 427, 429 (E.D. Va. 2010); United States v. Bowen, No. 5:92CR174, 2015 WL 2144012, at *3 (N.D.W. Va. May 7, 2015); United States v. Aquine, No. CR 9:01-1117-SB, 2014 WL 12843525, at *1 (D.S.C. Nov. 19, 2014). The district court's authority to order expungements is "confined to 'exceptional circumstances.'" Allen v. Webster, 742 F.2d 153, 155 (4th Cir. 1984)(quoting United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir.1977)). Exceptional circumstances are present when an "'arrest was proper but was based on a statute later declared unconstitutional.'" Id. (quoting Schnitzer, 567 F.2d at 539-40).

---

[5] Defendant also argues that the court cannot order expungement as class relief. ECF No. 179 at 8. The court will address Defendant's argument when it considers the issue of class certification.

Here, Plaintiffs do not seek purely equitable expungement. Rather, Plaintiffs seek expungement based upon convictions stemming from laws they challenge as unconstitutional in this suit. Therefore, the expungement sought in this case would result from proper arrests based on allegedly unconstitutional statutes. Such expungement fits within the parameters detailed in Allen.

### C. <u>Mootness as to D.S.</u>

Defendant contends that D.S.'s claims are moot because she is no longer in school and the charges against her were dismissed. ECF No. 165 at 1. In response, Plaintiffs contend that D.S.'s claims relate back to the filing of the suit "when her record was not expunged." ECF No. 167 at 11. Plaintiffs assert that records from D.S.'s arrest still exist. Id.

The Supreme Court discussed the doctrine of relation back and mootness in class action cases in Cty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). In that case, the Court held that a claim relates back to the filing of the suit and is not moot if it is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." Id. at 52 (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980)). In Genesis Healthcare Corp. v. Symczyk, the Court elaborated:

> The "inherently transitory" rationale was developed to address circumstances in which the challenged conduct <u>was</u> effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course. A plaintiff might seek, for instance, to bring a class action challenging the constitutionality of temporary pretrial detentions. In doing so, the named plaintiff would face the considerable challenge of preserving his individual claim from mootness, since pretrial custody likely would end prior to the resolution of his claim.

569 U.S. 66, 76 (2013).

By its very nature, the state K-12 education period has an expiration date, making it possible that a plaintiff could graduate from the state K-12 school system before his or her claim was resolved. The instant action, for instance, has been pending for four years. If a plaintiff were to have commenced this suit when he or she entered the ninth grade, that plaintiff would now be approaching graduation from high school and would potentially leave the K-12 system before the case concluded. Furthermore, students often move away from the state before they finish their K-12 schooling. The court finds that the class claims alleged here are transitory in nature. D.S.'s claims are not moot.[6]

### D. <u>Standing as to Girls Rock</u>

Defendant first argues that Girls Rock lacks representational standing. ECF 165 at 9. An association establishes representational standing when: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." <u>Hunt v. Washington State Apple Advert. Comm'n</u>, 432 U.S. 333, 333 (1977). For organizations without traditional membership, such as Girls Rock, <u>Hunt</u> requires that a reviewing court determine if the individuals in that organization possess the "indicia of membership." <u>Id.</u> at 344. Factors to consider are whether the individuals in an organization elect the organization's leadership, serve as the organization's leadership, and finance the organization's activities, including the costs of litigation. <u>Id.</u> Ultimately, for an organization to possess the "indicia of membership," it must "provide[] the

---

[6] Even if D.S. could not remain, the court notes that the action would still be able to proceed with D.D. as a class representative, as D.D. remains in the K-12 system.

means by which [the individuals in an organization] express their collective views and protect their collective interests." Id. at 345.

Defendant argues that the individuals in Girls Rock lack the "indicia of membership." Defendant asserts that there is no evidence that the "students -- who are clients served by the non-profit organization actually qualify as members of the organization in any sense as to give rise to associational standing." ECF No. 165 at 9. Specifically, Defendant states that "there is no evidence . . . that the students are elected or otherwise participate in the organization or that the students finance the organization . . . . Further, no evidence exists that Girls Rock provides a means by which the students 'express their collective views and protect their collective interests,'" as required by Hunt. ECF No. 165 at 9. Plaintiffs argue that that Girls Rock has a defined membership, which consists of "students in the Charleston area . . . . These members include teen leaders who have participated in an organizing leadership apprenticeship through the Girls Rock After School Program." ECF No 167 at 7-8. Plaintiffs state that the mission of Girls Rock is to "challeng[e] criminalization and promot[e] collective accountability for behavior." Id. at 8.

For the following reasons, the court finds that Girls Rock satisfies the minimum requirements for "indicia of membership." Girls Rock is a "grassroots, youth led movement" where the individuals in the organization "shape the organization's work" themselves. ECF No. 167 at 7. The organization is comprised of students in the Charleston area that benefit from its work. Specifically, teen leaders from the Girls Rock After School Program (GRASP) organize and conduct outreach, including speaking at public events about school-based referrals to law enforcement. Id. They also create videos about their advocacy. Id. at 8. Thus, the first criterion of the Hunt analysis is met. Regarding the second criterion, the court agrees with Plaintiffs and

concludes that the individual members of Girls Rock would have standing to sue in their own right for the same reasons as the named Plaintiffs. With regard to the third criterion, the organization's activities directly relate to the organization's core principles, which include challenging criminalization and promoting collective accountability for behavior. Lastly, because the organization is seeking injunctive relief, the participation of the individual members is not required. See Se. Booksellers Ass'n v. McMaster, 282 F. Supp. 2d 389, 393 (D.S.C. 2003). The court concludes that Girls Rock possesses representational standing.

Defendant also argues that Girls Rock lacks organizational standing. A group has organizational standing and may bring suit on its own when it "seeks redress for an injury suffered by the organization itself." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005). Accordingly, the established individual standing requirements -- the requirements that a plaintiff have suffered an injury, that the injury is traceable to the actions of a defendant, and that a court could offer redressability with a favorable ruling -- apply to organizations. Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc., 528 U.S. 167 (2000).

Plaintiffs assert that Girls Rock has been injured because charges against some members under the Disturbing Schools Law required it "to increase its public education efforts, advocacy, and outreach activities by redirecting its programming and spending extra time and resources supporting impacted members . . . . [-- t]ime that would otherwise be spent developing programming and providing direct services to young people[,]. . . [which is] a drain on the resources of the organization." ECF No. 167 at 10. In response, Defendant cites Lane v. Holder, 703 F.3d 668 (4th Cir. 2012), arguing that Lane stands for the proposition that an organization does not suffer an injury when the harm it alleges is that it was required to redirect funds in response to an action by a plaintiff.

In Lane, the Fourth Circuit held that a diversion of resources can still create an injury in fact if the challenged laws "burden [plaintiffs] directly." Id. at 673. The Fourth Circuit distinguished types of injuries, stating that "minor inconveniences are distinct from an absolute deprivation." Id. Here, Girls Rock alleges an injury beyond simply redirecting funds. The Disturbing Schools and Disorderly Conduct Laws detract from the organization's mission and purpose and require significant advocacy and outreach efforts. ECF No. 167 at 10. Disturbing Schools and Disorderly Conduct Laws directly burden Girls Rock, and the burden is more than a minor inconvenience to the group. The court finds that Girls Rock possesses organizational standing.

### E. Res Judicata, the Rooker-Feldman Doctrine, and Heck v. Humphrey

Defendant argues that the doctrine of res judicata, the Rooker-Feldman doctrine, and Heck apply to Plaintiffs who were convicted or pleaded guilty to the statutes at issue. Defendant asserts that the relief sought would "render the sentences of [Plaintiffs] nullities." ECF No. 165-1 at 15.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004)(quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398(1981)).

The Rooker-Feldman doctrine serves to bar federal courts from considering previously decided state court issues. In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court held that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

11

commenced and inviting district court review and rejection of those judgments." Id. at 284. "Rooker-Feldman bars a losing party in state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Id. at 287 (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).

In Heck, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994).

In this case, Plaintiffs are seeking enjoinment from future enforcement, and are seeking to prevent Defendant from retaining or considering records created as a result of convictions under the Disturbing Schools and Disorderly Conduct Laws. The requested relief is different from challenging the actual validity of any sentence. Rather, Plaintiffs are asking the court to evaluate the constitutionality of the Disturbing Schools and Disorderly Conduct Laws. The court finds that neither res judicata, the Rooker-Feldman doctrine, nor Heck is implicated in this matter.

### F. Constitutional Claims

Defendant moves the court to grant his motion to dismiss on the grounds that the Disturbing Schools and Disorderly Conduct Laws are constitutional. Procedurally, a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly made before a defendant files an answer to a complaint, in the initial stages of a lawsuit. Fed. R. Civ. P. 12(b)(6)("A motion asserting [a 12(b)(6) defense] must be made before pleading if a

responsive pleading is allowed"). At the 12(b)(6) stage, the court is tasked with performing a threshold analysis -- a determination as to whether a plaintiff has stated a claim upon which relief can be granted in his or her complaint -- and not an in-depth analysis of the claims alleged within that complaint. See In re KGC Homeowners, Inc., No. 16-01062-5-JNC, 2017 WL 3405509, at *2 (Bankr. E.D.N.C. Aug. 8, 2017)("If a complaint fails to meet this threshold obligation, the action should be dismissed . . . .").

This action is in its initial stages. The constitutional challenges to the Disturbing Schools and Disorderly Conduct Laws represent the entirety of this claim. Performing Defendant's requested constitutional analysis at this juncture would amount to the court determining the final outcome of this case, which strays well beyond the threshold analysis with which the court is tasked.

### G. Class Allegations

Defendant argues the class action allegations should be stricken because Plaintiffs "fail to meet the requirements for a class action" under Rule 23 of the Federal Rules of Civil Procedure. ECF No. 165-1 at 32.

Rule 23 of the Federal Rules of Civil Procedure provides that "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Plaintiffs state that it is "in fact rare to [strike class allegations] in advance of a motion for class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245

(C.D. Cal. 2011). However, a court in this circuit recently held that "[a] court may grant a motion to strike class allegations where the pleading makes clear that the proposed class cannot be certified and no amount of discovery would change that determination." Burch v. Murphy, No. 2:17-CV-03311, 2019 WL 1243860, at *8 (S.D.W. Va. Feb. 25, 2019)(citing Waters v. Electrolux Home Prod., Inc., Civ. Action No. 5:13-cv-151, 2016 WL 3926431, *4 (N.D. W. Va. July 18, 2016)). To prevail on a motion to strike class allegations, "defendants have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." Bryant v. Food Lion, Inc., 774 F. Supp. 1484, 1495 (D.S.C. 1991).

In the present case, no pleading has made it clear that the class in this matter cannot be certified, and it is unclear whether discovery would change that determination. It would be premature to rule on the validity of the class allegations at this juncture. Accordingly, the court declines to strike the class allegations at the motion to dismiss stage.

## IV. CONCLUSION

Defendant's motion to dismiss, ECF No. 165, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Margaret B. Seymour
Senior United Sates District Judge

Dated: March 30, 2020
Charleston, South Carolina