UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

```
* * * * * * * * * * * * * * *
NIYA KENNY, ET AL.,          * CIVIL NO. 2:16-CV-2794
                             * OCTOBER 04, 2021  11:19 A.M.
              Plaintiffs,    * MOTION FOR SUMMERY JUDGMENT
                             *
vs.                          * TELEPHONE CONFERENCE
                             *
ALAN WILSON, ET AL,          * Before:
                             * HONORABLE MARGARET B. SEYMOUR
                             * UNITED STATES DISTRICT JUDGE
              Defendants.    * DISTRICT OF SOUTH CAROLINA
* * * * * * * * * * * * * * *
```

APPEARANCES:

For the Plaintiffs:       SARAH ANN HINGER, ESQUIRE
                          GALEN LEIGH SHERWIN, ESQUIRE
                          American Civil Liberties Union Fndn.
                          125 Broad Street, 18th Floor
                          New York, New York 10004

                          DAVID ALLEN CHANEY, JR. ESQUIRE
                          American Civil Liberties Union
                          P.O. Box 20998
                          Charleston, SC  29413


For Defendant Alan Wilson, et al.:

                          JAMES EMORY SMITH, JR. ESQUIRE
                          SC Attorney's General's Office
                          P.O. Box 11549
                          Columbia, SC  29211


Court Reporter:           Michele E. Becker, RMR, CRR, RPR
                          201 Magnolia Street
                          Spartanburg, SC  29306
                          (864) 905-8888


Proceedings recorded by mechanical stenography, transcript
produced by computer.


Michele Becker, RMR, CRR, RPR
US District Court
District of South Carolina

1          (Court convened at 11:19 a.m.)

2              THE COURT:  Good morning.  We're here in the case of

3     Kenny, et al, versus Wilson, et al.  This is Civil Action

4     Number 2:16-2794.  The Court wanted to have this hearing to

5     clarify some issues that were raised in the motions that were

6     filed with the Court.  And so, first of all, I'd like to find

7     out who is representing the Plaintiffs on the line, please?

8              MS. HINGER:  Good morning, Your Honor.  This is

9     Sarah Hinger on behalf of the Plaintiffs.

10             THE COURT:  All right.

11             MR. CHANEY:  Good morning, Your Honor.  Allen Chaney

12    on behalf of the Plaintiffs, though Ms. Hinger is going to be

13    handling the argument in this case.

14             THE COURT:  Okay.

15             MS. SHERWIN:  And good morning.  Galen Sherwin for

16    the Plaintiffs also.  Thank you.

17             THE COURT:  All right.  Anyone else on the line for

18    the Plaintiffs?

19             THE PARALEGAL:  Good morning, Your Honor.  I'm just

20    a paralegal with Plaintiffs under Sarah Hinger.  Thank you,

21    Your Honor.

22             THE COURT:  Thank you.  And for the Defendants?

23             MR. SMITH:  Emory Smith for the Attorney General,

24    Your Honor.  And I'm the only one on line for the Defendants.

25             THE COURT:  Okay.  Thank you, very much.  I

1  appreciate everybody being available today to go over some

2  issues in this case.  And my first -- I don't think we need to

3  go into any detail about the facts because they're pretty

4  clear to the Court at this time, but my first question for

5  Plaintiff's counsel:  When the Amended Complaint was filed,

6  the Amended Complaint only added G.D., I think, but it did not

7  change what the parties were asking for as far as relief.  So,

8  I would like to hear from the Plaintiff with regard to the

9  Amended Complaint.  Specifically, does the fact that the

10  Disturbing Schools law was amended in 2018, to render the law

11  no longer applicable to students, have any impact on the

12  Court's authority to now consider the constitutionality of the

13  former law?  In other words, can the Court judge a former law

14  as unconstitutional?

15          COURT REPORTER:  Your Honor, I'm sorry to interrupt.

16  This is Michele Becker, the court reporter in Spartanburg.  I

17  am having a really hard time understanding you.  You're not

18  coming through very clear on the phone, and I might need to

19  ask you to repeat the last few sentencings when you were

20  quoting a document because I couldn't hear it.

21          THE COURT:  Sure.  Okay.  The question to the

22  Plaintiff was, was does the fact that the Disturbing Schools

23  law was amended in 2008, to render the law no longer

24  applicable to students, have any impact on the Court's

25  authority to now consider the constitutionality of the former

1    law?  Can the Court adjudge a former law as unconstitutional?

2         **MS. HINGER:**  Thank you, Your Honor.  To the question

3    of the Disturbing Schools law, which was amended, the

4    Plaintiff claims -- the question would be whether or not the

5    Plaintiffs' claims are mute at this point following the

6    revisions to the law.  And they are not because there is

7    mainly relief that is available to the Plaintiffs in this

8    case.  And that's because the charges that were made under the

9    Disturbing Schools law as it existed prior to May 17th, 2018,

10   continue to exist on the records of young people and to impact

11   their lives.  And that's a continuing ongoing injury stemming

12   from the unconstitutional, vague language of the statute.  And

13   because that ongoing injury remains, the Plaintiffs' claim is

14   not moot, and the Court has the authority to rule on the issue

15   and to order such relief as is necessary to remedy the

16   violation of Plaintiffs' Constitutional rights.

17        **THE COURT:**  I understand that, but are you asking me

18   to invalidate 420 as it applies to the enforcement prior to

19   the amendment?

20        **MS. HINGER:**  No, Your Honor.  Thank you.  To

21   clarify, we are no longer seeking -- we recognize that there

22   is no need for the Court to enjoin enforcement of the law as

23   it existed prior.  We are only seeking with regards to the

24   Disturbing Schools law.  The Court order that records --

25   criminal or juvenile records generated pursuant to that law

1    prior to May, that the State be prohibited from using those or

2    relying on those records.

3         THE COURT:  So, would that require me to rule that

4    420 was unconstitutional or not?

5         MS. HINGER:  Yes, Your Honor.  We are asking the

6    Court to declare that the language of the law is

7    unconstitutional.  And, again, that would be relevant as that

8    particular statutory provision continues to remain and has

9    force and effect against it as it exists on their criminal

10    records.

11         THE COURT:  So, you're asking me to rule the former

12    420 was unconstitutional, not as it's been amended?

13         MS. HINGER:  Yes.  That's correct, Your Honor.

14         THE COURT:  But that's not clear in your filing.

15    And when I go back and read your Amended Complaint, you didn't

16    change your Amended Complaint to reflect that.

17         MS. HINGER:  To the extent that -- we certainly

18    would concede we are not seeking for the Court to enjoin

19    Section 16-17-420 as it currently exists, or to make a

20    declaration as to its constitutionality.

21         THE COURT:  All right.  You mean the current one?

22         MS. HINGER:  Yes.

23         THE COURT:  Okay.  So, can you explain to me why you

24    never sought to amend your complaint to specify that?

25         MS. HINGER:  Yes, Your Honor.  I think from the

6

1    Plaintiffs' perspective, the complaint and the claim of child

2    was against law Section 16-17-420 as it existed when filed.

3    And so that -- the claim itself did not change, although

4    necessary remedy was modified by the changing facts over the

5    course of the case.  And so from the Plaintiffs' perspective,

6    that did not require an amendment of the particular terms of

7    the claim, although we have acknowledged over the course of

8    proceedings that we are not seeking an enjoinment of ongoing

9    enforcement under Section 16-17-420.

10          **THE COURT:**  Okay.  Mr. Smith, do you have anything

11    to add to that on that particular issue?

12          **MR. SMITH:**  Your Honor, you've raised an interesting

13    question, and I was just trying to pull up the Amended

14    Complaint now.  Obviously, I understand that the Plaintiffs

15    are no longer seeking injunctive relief as to the amended

16    Disturbing the Schools statute.  And I know that they allege

17    that they are seeking retroactive relief as to the prior

18    version of the statute.  And we have -- without my going into

19    it right now, as Your Honor knows, contested their right to

20    seek retroactive relief.  But I think that it is an

21    interesting question here, Your Honor, in that whether this

22    Court has the authority to declare a law unconstitutional

23    that's no longer in effect and grant relief accordingly, and

24    if it cannot do so, whether this Court can grant any relief.

25    In other words, can the Court grant relief as to a law that is

1  no longer in effect and has not been in effect for

2  approximately, I think, three years now.  So, I have some

3  concern about that.  And if need be, I think the parties could

4  address that through short additional briefing for Your Honor.

5          THE COURT:  All right.  Mr. Smith, what about the

6  amended Disturbing the Schools law that says:  After the

7  effective date of this Act, all laws repealed or amended by

8  this Act must be taken and treated as remaining in full force

9  and effect for the purpose of sustaining any impending or

10  objective rights, civil action, special proceedings, criminal

11  prosecution or appeal existing as of the second date of this

12  act?

13          MR. SMITH:  I think it was -- I may pull up the full

14  text of that.  I can right now.  As I recall that language --

15  I don't have the particular language up, but I think it did

16  allow for any proceedings under the old law to continue.  I

17  don't know that we have -- so it did say that, in so many

18  words.

19          THE COURT:  Because I was reading right from the

20  statute.  So, if the State specifically left out that

21  language, I put that language in, it seems that it would

22  have -- the Court would have jurisdiction to address that.

23          MR. SMITH:  Well, I understand your point, but I

24  think it would be -- possibly so, Your Honor, but it's not --

25  while it preserves those matters that may be pending, the law

1    itself is not enforceable as to any new proceeding.  And so I

2    think there's still some question there about whether the

3    authority of the Court to declare a prior law

4    unconstitutional, I don't think -- the Plaintiffs have said

5    they don't need an injunction as to the new law, and this is a

6    part of the new law.  It simply preserves those aspects of the

7    former provision.  And I'm not sure whether that's enough to

8    authorize this Court to, in effect, declare the prior law

9    unconstitutional.

10           THE COURT:  Another issue to consider is that the

11   prior law was not repealed but only amended.  So, it's not

12   like it was taken off the books.  It was not appealed.  It was

13   not appealed.  It was just amended.

14           MR. SMITH:  Well, Your Honor, I think that that

15   still has the same effect.  It was a virtual complete

16   rewriting of the law that took out any charge against a

17   student, unless the student made a -- physically harmed

18   personnel or another student, or made a threat of physical

19   harm.  So, it was -- in effect, it replaced the new with the

20   old -- I mean, the old with the new.

21           THE COURT:  But it also stated that the old would

22   stay in effect as full force and effect for the purpose of

23   sustaining criminal prosecution.

24           MR. SMITH:  I believe it did so, Your Honor.

25           THE COURT:  So, this issue goes to the entire

1  sub-class, and then with no argument at that time that it was

2  an inappropriate sub-class.

3          MR. SMITH:  I'm sorry.  Which sub-class, Your Honor?

4  Are you talking about the class of all students?

5          THE COURT:  The class of all elementary and

6  secondary students in South Carolina for whom a record exists

7  related to being taken into custody, charges filed,

8  adjudications, dispositions under 420.

9          MR. SMITH:  I don't believe -- I don't believe we

10  argued that the Court would lack authority due to the

11  amendment.  We did argue that the class writings expungement

12  relief, that the Court lacked authority under the

13  circumstances and facts of this case otherwise to grant

14  retroactive expungement across the sub-class.

15          THE COURT:  But that wasn't a jurisdictional

16  argument, correct?

17          MR. SMITH:  Well, if -- not based upon the pleading

18  itself.  But we contended that the Court lacked that

19  authority.  So, I suppose to that extent it would be

20  jurisdictional.  But it was not tied to the amendment.  It was

21  just that class-wide injunctive relief is inappropriate.

22          THE COURT:  Okay.  Ms. Hinger, do you have anything

23  else to add to that?

24          MS. HINGER:  Yes, Your Honor.  There's just one

25  other point in addition to as you mentioned the continued

1    statutory language stating that the prior law would remain and

2    that facts for purposes of ongoing enforcement.  And I think

3    that there are examples in the case law of Courts ruling on

4    the basis of the Constitutionality of a law that has since

5    been amended in the *habeas* context.  And that comes up also in

6    some of the cases that were cited where Courts have granted

7    expungement in the exceptional circumstance, such as Your

8    Honor found in this case where a record exists of a conviction

9    under a law that was subsequently determined to be

10    unconstitutional.  And Your Honor's opinion is on the record

11    at ECF 185, that the leading case on that cited from the

12    Fourth Circuit is *Allen v Webste*r.  It's *742 F.2nd 153*.

13            **THE COURT:**  Okay.  Thank you.  With regard to the

14    class representative, G.D. was in the tenth grade in 2019.

15    So, I'm assuming for -- it's possible he could have graduated

16    in 2021.  Can he still be the class representative for the

17    former Disturbing Schools Rule sub-class?  I mean, for the --

18            **MS. HINGER:**  Yes.  Apologies.  Yes, Your Honor.

19    This is -- sorry.

20            **THE COURT:**  I'm sorry.  The enforcement class.  I'm

21    sorry.  The enforcement class.

22            **MS. HINGER:**  Yes.  This is Sarah Hinger for the

23    Plaintiff.  So, importantly, Your Honor, in considering class

24    certification, also did identify correctly that in our opinion

25    that the injuries involved in this case are a type that are

1    likely to be repeated, and that the course of this case,

2    because of the nature of school students moving through the

3    education system was such that it would be a transitory harm

4    whereby, once the class was certified with a representative,

5    the fact that they might then move through the education

6    system through the course of the case does not actually impact

7    their ability to continue to stand as the class

8    representative.

9            **THE COURT:**  Okay.  So, the class representative for

10    the class regarding enforcement of disorderly conduct, has

11    D.B. graduated, or does it make a difference?

12            **MS. HINGER:**  Your Honor, it does not make a

13    difference.  Our understanding is that D.B. was set to

14    graduate, although we would need to confirm whether, in fact,

15    he has officially graduated.

16            **THE COURT:**  D.S. was in high school in 2016.  So,

17    D.S. may have graduated in 2021 too if he's charged with the

18    former Disturbing Schools, and if he was a freshman in

19    2015/2016.  So it's possible that S.P. could have graduated.

20    Could he still be a representative for the disorderly conduct

21    sub-class?

22            **MS. HINGER:**  Yes, Your Honor.  So, for the same

23    reasons, because of the transitory nature of the injury to

24    school students in this case, they can still remain class

25    representatives.  Additionally, Your Honor, we do have an

1    organizational plaintiff in this case with ongoing standing to

2    represent both accused members and its own interests as an

3    organization.  And that's the Carolina Youth Action Project.

4         **THE COURT:**  All right.  Mr. Smith, do you have

5    anything that you want to add on this issue with regard to the

6    representatives?

7         **MR. SMITH:**  Well, Your Honor, I was trying to pull

8    up the class documents.  I wasn't really -- didn't review the

9    class documents before this hearing today because I was

10   thinking about it being more in terms of summary judgment.

11   But I believe we did raise the question in our class filings,

12   and I believe we argued that because of the graduation and the

13   departure of the Plaintiffs from the school system, that there

14   would not be a Plaintiff left who could carry forward the case

15   who could represent the class.

16        And I believe that the Plaintiffs argued and may

17   have cited some case law that they could.  I have not reviewed

18   that case law since then, but to the extent that we raise the

19   defense that a class representative has to have an active

20   stake in the litigation, be still in the school system, meet

21   the requirements for standing, then we would maintain that

22   defense now.

23        **THE COURT:**  So, Mr. Smith, what about the *Sosna*

24   case, the Supreme Court Case, *Sosna versus Iowa, at 95 S Ct.*

25   *553*?

1          **COURT REPORTER:**  I'm sorry.  What was the name of

2  that case again?

3          **THE COURT:**  *S-o-s-n-a versus Iowa, 95 S Ct. 553.*

4          **MR. SMITH:**  On what point is that case -- Your

5  Honor, what issue is that case?

6          **THE COURT:**  Okay.  One second.  I'll get it for you.

7          The Supreme Court in that case:  The controversy may

8  exist between a main defendant and a member of the class

9  represented by the main defendant, even though the claim of

10  the main defendant has become moot.

11          **MR. SMITH:**  Yeah.  All I can say, Your Honor, is

12  that, again, I have not reviewed all those class filings to

13  date because I didn't -- maybe I should have, but I didn't

14  anticipate we'd be getting into those class issues today.

15          But just as I said, I think we raised the defense

16  that the action would be mooted, or it would be inappropriate

17  for people to carry on as class representatives when they were

18  no longer a part of the class itself, when they had left the

19  school system.  I believe the Plaintiffs had some arguments to

20  the contrary.  And with the -- and, in fact, however, they did

21  bring in another class representative, D.D., to represent the

22  class.  The Carolina Youth Action Project, Girls Rock, is a

23  Plaintiff and continues to be a Plaintiff, however they are

24  not the class representative.  So, their continuation in the

25  case is not as a representative, it's just as a named

1   plaintiff.

2         **THE COURT:**  Okay.  Thank you, very much.  Anything

3   else on that issue?

4         **MS. HINGER:**  Nothing further at this time, Your

5   Honor.

6         **THE COURT:**  So, let me go to this facial versus

7   as-applied standard.  Does it make a difference if the Court

8   capitalizes the challenge to either statute as facial versus

9   as-applied?  The challenge to the former Disturbing Schools

10  statute appears to be facial with no as-applied language used.

11  However, the former Disturbing Schools sub-class is limited to

12  students.  Just to be clear, Plaintiffs are not asking the

13  Court to invalidate as unconstitutionally vague the former

14  Disturbing Schools law as to everyone other than individuals

15  who are charged under the law when they were primary or

16  secondary students; is that correct?

17        **MS. HINGER:**  Your Honor, we do believe that that

18  ruling would be sufficient to redress the injuries that

19  Plaintiffs continue to face.  We do think, first, that the

20  context of rules and the application of both of the challenged

21  laws to school students is particularly relevant to the

22  Court's analysis here.  With regards to the former Disturbing

23  Schools law, we do believe that the language was facially

24  vague and applied including to college students, and as far as

25  an apartment complex owned by a college.  And for that reason

1    we believe that -- and we maintain that the language of that

2    law is vague beyond its context of application to elementary

3    and secondary school students, and that the Court could find

4    the law unconstitutionally vague on its face.  However, should

5    the Court reach a narrower conclusion that the law is vague

6    as-applied to elementary and secondary school students that

7    would satisfy the remaining injury and relief requested by the

8    Plaintiffs.

9           THE COURT:  So, the sub-class whom expungement would

10   apply is limited to students, correct?

11          MS. HINGER:  That is correct, Your Honor.

12          THE COURT:  But your arguments as to why the former

13   law is unconstitutional isn't similarly limited; is that what

14   you're saying?

15          MS. HINGER:  That is correct, Your Honor.  We argue

16   that the prior Disturbing Schools law is vague even beyond

17   this application to elementary and secondary school students,

18   but the relief that Plaintiffs seek is specific to the

19   elementary and secondary school students.

20          THE COURT:  So, I just want to find out, is everyone

21   in agreement then that the challenge to the disorderly conduct

22   law is a hybrid, facial and as-applied challenge, or does it

23   make a difference?

24          MR. SMITH:  Your Honor, this is Emory Smith for the

25   State, and respectfully are not in agreement with that.  We

1    believe that these are facial challenges, and that although

2    they allege that they are making as-applied to school

3    children, this is a huge class of over 750,000 students,

4    15 percent or more of the entire population of the state.  And

5    although they allege that, the contentions about the statute

6    are purely facial, and that based upon the terms that they

7    contend are vague.

8          The law is that as-applied -- this was in our

9    memoranda -- that as-applied challenges are directed to

10    particularized facts, specific -- generally specific people or

11    specific circumstances.  And instead, this is a broad brush

12    class that includes, as I said, a huge student population.

13    And under current figures for the last year, only 1,000,

14    one-seventh of one percent of those were charged, and the

15    circumstances may vary.  So, it's really not appropriate for

16    an as-applied challenge.

17          Now, having said that, if it is a facial challenge,

18    it does make some difference because facial challenges are

19    looked upon with disfavor.  And a reason is the absence of

20    particular facts in a facial challenge.  And so if this is

21    facial as this appears to be, then this would be a further

22    constraint on the Court as to overturning the statute because

23    they are looked upon with disfavor.  However, if the Court

24    views this as as-applied, we believe the result is the same

25    for the reasons we've discussed in our memoranda.  We believe

1    that the statutes are not vague regardless of whether this is

2    as-applied or facial.

3              **THE COURT:** Okay.

4              **MS. HINGER:** Yes.  Thank you.  Apologies, Your

5    Honor.  There's a couple of points I wanted to address in

6    response.  First, the standard applied to facial challenges

7    and the relevance of the outside context in this case.  Even

8    if the Plaintiffs' claims were construed as a facial

9    challenge, the relevant point here is that the Court and the

10   Fourth Circuit have held that the Plaintiffs have standing to

11   bring a facial challenge to the Disturbing Schools law.  And

12   where a facial challenge is proper, the same scrutiny applies

13   to a law that abuts each in-expression to a law that imposes

14   criminal penalties, and to a law that applies to young people

15   in the context where they have diminished culpability and an

16   under-developed sense of maturity.  All of those things apply

17   equally where a facial challenge is appropriate.

18              The case law cited, particularly the *Schleifer* case

19   cited -- *Schleifer*, excuse me, by Defendants, goes to the

20   analysis of whether or not a plaintiff can appropriately bring

21   a facial challenge.  That question has been decided both by

22   this Court and the Fourth Circuit in this case.  And where a

23   facial challenge is appropriate, the same standards of

24   searching scrutiny applies.

25              Second point I wanted to address is with regards to

1    the Disorderly Conduct law, and the particular importance of

2    the as-applied context in this challenge.  We are challenging

3    the law as it applies to elementary and secondary school

4    students, children in the school setting.  And the conduct

5    here is analogous, I think, to the Fourth Circuit's decision

6    in *Lanning*.  That's *723 F.3d 473*, where in that case the Court

7    found that the facts of the case indicated the real risk that

8    a disorderly conduct law in this particular context of its

9    application in a sex sting of gay men could be used to

10   arbitrarily and discriminatorily be enforced against gay men.

11          Similarly here, the particular context of

12   enforcement makes clear the ways in which the law is

13   unconstitutionally vague and can and does result in arbitrary

14   and discriminatory enforcement in this specific context.  Most

15   importantly in the school context, the law is applied to

16   children, who as the Fourth Circuit found are in many ways

17   disorderly and boisterous by their own nature.  And as the

18   undisputed record shows, school codes of conduct identify that

19   disorderly, boisterous and disruptive conduct by students is

20   often addressed with as little as a verbal reprimand in

21   schools.

22          However, when we apply the disorderly conduct law in

23   the school context, there is no language and no objective

24   standard in the law to understand what should differentiate

25   disorderly or boisterous conduct that's handled by schools on

1    a regular basis from disorderly or boisterous childhood

2    conduct that should be subject to an arrest.  And that's the

3    fundamental problem of vagueness that the Plaintiffs argue in

4    this case why it is important and relevant that the

5    application context and the as-applied challenge here.

6         **MR. SMITH:**  Your Honor, Emory Smith, if I may

7    respond.  Plaintiffs -- and this is, I think, with their

8    argument and my response, we're getting a little beyond what

9    Your Honor's question was.  But I respectfully would like to

10   address it.  And they've brought up that in their filings that

11   the school disciplinary codes sometimes include just a

12   disciplinary level of offense for disorderly conduct, or words

13   to that effect, and that it may be a fairly light disciplinary

14   consequence.

15        Well, the fact that a school chooses to do that does

16   not make the criminal statute vague.  A school could in a

17   disciplinary policy say, for example, that fights that occur

18   on school grounds if ended quickly with the intervention of

19   school personnel shall only result in a one-day suspension.

20   Whereas, fighting on the school grounds could potentially be

21   not only disorderly conduct, but also assault and battery.

22   So, the fact that they might choose hypothetically to make

23   fighting, give it just a mild disciplinary consequence, does

24   not make the criminal laws themselves vague.  It's the

25   school's choice to do what they have done, but it doesn't make

1  vague the criminal laws.  So, Plaintiffs' argument we believe

2  is fallacious in that respect, Your Honor.

3          **THE COURT:**  Okay.

4          **MS. HINGER:**  I suppose just to further respond, Your

5  Honor, I think the assault and battery law is not in question

6  here and its terms, but the problem with a criminal law that

7  imposes criminal penalty beyond any lesser penalties of a

8  school rule is that the law itself does not provide any

9  definition or objective way to determine what behavior

10  constitutes disorder or boisterousness.

11          As outlined in Plaintiffs' memorandum in support of

12  their Motion for Summary Judgment, what constitutes

13  boisterousness or disorder is in every instance dependent on

14  the subjective judgment of the person making the enforcement

15  decision.  There is nothing in the law that can objectively

16  guide that determination.  And moreover, in this case First

17  Amendment protected conduct unlike physical fighting is

18  directly implicated as numerous cases have held.  Students

19  engage in protective speech and expression importantly as a

20  foundation of democracy as a part of attending schools.  That

21  was recognized by the Fourth Circuit in this case as well.

22  And you've seen that the laws challenged in this case are

23  applied to students criticizing police, and can also extend to

24  behaviors and discussions where they're described merely as

25  being boisterous, which could equally describe robust --

1    (Phone Conference Interruption) -- that children engage in and
2    are protected in the school context.
3         THE COURT:  Okay.  Thank you.  All right.  So just
4    let me make sure I'm clear on this.  Are the Plaintiffs asking
5    the Court to invalidate the Disorderly Conduct Law as to
6    primary and secondary children while they're attending school,
7    or invalidate it as to primary and secondary children with no
8    limitations?
9         MS. HINGER:  Your Honor, while attending school.
10        THE COURT:  Okay.  So, in your class certification
11   it's limited to school attendance, but in your substantive
12   motions I don't see that same limitation, so I wanted to be
13   clear about that.
14        MS. HINGER:  Thank you, Your Honor.  Yes.  To
15   clarify, we would be seeking relief for students as they
16   attend school.
17        THE COURT:  Okay.  So, with regard to -- what
18   exactly does this Court's order have on this day as to the law
19   enforcement Defendants?  Procedurally, what would have to
20   happen with regard to these Defendants?
21        MS. HINGER:  Your Honor, I don't believe anything in
22   particular would need to happen.  An order enjoining
23   enforcement in this case would presumably apply to those
24   defendants as with anyone in the state.  So, Plaintiffs
25   position is that nothing in particular would need to happen

1    regarding -- regarding those defendants.

2         **MR. SMITH:**  Your Honor, this is Emory Smith.  The

3    order granting a stay as to the Law Enforcement Defendants

4    simply said that they agree to abide by any order or other

5    precedent of this Court and the U.S. Court of Appeals or the

6    Fourth Circuit regarding the constitutionality of the statutes

7    and their enforceability.  And the Plaintiffs agree that they

8    should not be obligated to further defend this action or file

9    any further responses.

10         **THE COURT:**  Okay.  Thank you.  I appreciate that.

11         All right.  So, is there anything else that you

12   would like to put on the record, either Ms. Hinger or

13   Mr. Smith, with regard to your Motion for Summary Judgment

14   that you want to emphasize at this point in time?  I'll let

15   Ms. Hinger start, and then, Mr. Smith, you can follow.

16         **MR. SMITH:**  Well, Your Honor, my argument was on the

17   substance of the motions, was going to be based upon the

18   filings of the parties.  The only -- and I can go through all

19   of that if Your Honor would like to hear that.  The only thing

20   that I was really going to address that was not already

21   briefed is that -- let me find it here.  The Plaintiff -- in

22   our filings we cited a number of examples from the incident

23   reports that the Plaintiffs themselves filed showing clearly

24   criminal conduct by the students referenced in those incident

25   reports.  And, in fact, the incident reports and declarations

1   regarding the Plaintiffs' own conduct we believe falls within

2   the criminal ambit of these laws.  And we discuss that in our

3   filings.  But the Plaintiffs say that their point is not that

4   the laws can be applied to criminal conduct.  It's that the

5   students can't tell what conduct is prohibited.  And we

6   believe that they can for the reasons that we pointed out in

7   our briefing.  We've gone back and forth with Plaintiffs over

8   it.  They have their arguments; we have ours.  We believe that

9   it is quite clear that the -- there are built-in restraints in

10  the Disturbing -- the former Disturbing the Schools law, that

11  it has to interfere with the learning environment, and has to

12  be willful or unnecessary.  And that under case law also

13  fighting words, it has to be fighting words of verbal conduct

14  or yelling that would make them subject to the Disturbing the

15  Schools law.  And so these are limitations that are inherent

16  in the law and case law.  And so they apply here and provide

17  guidance.

18          And then as to the Disorderly Conduct statute, it's

19  disorderly or boisterous conduct, those are terms of common

20  meaning.  Plaintiffs have said, in effect, however, that the

21  boy's threats are nothing really to distinguish that from pep

22  rallies.  I respectfully believe that any person of reasonable

23  intelligence or understanding, including a child, would know

24  the difference between a pep rally and boisterous conduct that

25  was disturbing to the school environment that was disorderly.

1    And case law does not indicate any confusion of the Courts

2    over such terms, and we have pointed out numerous cases in

3    which similar terms have been sustained, particularly

4    disorderly.  There are disorderly conduct statutes, breach of

5    peace statutes that have been widely sustained.

6            So, that was the only point other than that I wanted

7    to add with regard to their reply brief that is not already

8    addressed, which is that they acknowledge that the statutes

9    reach criminal conduct.  They contend that, however, that the

10   students can't tell the difference between criminal and

11   noncriminal.  And we believe that they can with the

12   constraints on the application of the statutes by case law and

13   the incident reports themselves.

14           One other point I would like to make is, I don't

15   think that -- I'm not sure whether I wrote this, but there has

16   been -- these laws have been in effect for decades.  The

17   former Disturbing the Schools law for nearly a century, I

18   think 99 years before the 2018 amendment.  The Disorderly

19   Conduct statute I think has been in effect for 52 years.  And

20   no court of this State, no Federal Court in all those many

21   many years has found either of these statutes to be

22   unconstitutional.  And the fact that so few students are now

23   charged under these laws shows that there is not a difficulty

24   in understanding or application of these laws in the school

25   environment.

1          I'll be glad to discuss our filings in more detail,

2    but really our positions are set forth in there.  If you would

3    like to hear more, I'll be glad to.  But, otherwise, these are

4    two particular points that we wanted to address.

5          **THE COURT:**  Okay, Mr. Smith, thank you, very much.

6    Your brief was very thorough and very helpful to the Court.

7    So, I don't really need anything in addition at this time.  I

8    appreciate your efforts.

9          **MR. SMITH:**  Thank you, Your Honor.

10          **THE COURT:**  Ms. Hinger, do you have anything you

11    want to say with regard to your motion?

12          **MS. HINGER:**  Thank you, Your Honor.  Yes.  I do

13    think that our arguments are set forth in our briefs and our

14    response to the Defendants arguments as well.

15          I just wanted to point out here -- well, first, to

16    clarify, I don't think we would construe our position as

17    conceding that there is specific criminal conduct that is

18    appropriately covered under the law.  The law in our position

19    contains no standard to determine what should be characterized

20    as criminal conduct.  But what I wanted to address here was

21    the point that students are arrested, and that the laws have

22    been in place over a number of years.  And this is more than

23    an academic argument about the language of these laws.

24          What the records show is that in the last five

25    years, 5,000 young people have been charged with disorderly

conduct in South Carolina.  Over 70 percent of those charges

came from school-based arrests.  So, these laws are a

substantial driver of harmful context -- contact with the

Juvenile Justice system.  In South Carolina we've seen the

impact on students of arrests and charges, even when those

charges are dropped under these laws.  To take the example,

our Plaintiff, Niya Kenny, who witnessed a fellow classmate

being ripped from her desk and physically restrained when she

was arrested for violating the Disturbing Schools law.

Ms. Kenny as a result of speaking out in defense of that

student was herself handcuffed in front of her classmates, and

her teachers, escorted out of the building and into a paddy

wagon, taken to an adult detention center where she sat for

the afternoon terrified of what would happen to her.  She was

so traumatized that she couldn't complete her education and

ended up receiving a GED rather than return to her high

school, to her friends, to have that sense of achievement.

Other students report that after receiving a

criminal charge, they were disciplined more harshly and

referred to alternative school settings where they couldn't

even access the course requirements necessary to graduate from

school.  They were denied free lunch and transportation

services that they were entitled to under federal programs for

students.  And other students were denied the support services

that they were supposed to receive as students with

1    disabilities and, instead, criminalized under these laws.
2    They, in addition to the stress and worry, encountered real
3    financial hardship, as well as the potential negative impacts
4    of an ongoing criminal record.  So, these are all real and
5    serious injuries that young people in South Carolina have
6    experienced and continue to experience.

7          And the last point I just want to emphasize is, that
8    because of the very vague nature of the laws and the
9    requirement for subjective determinations in their
10   enforcement, discriminatory application is encouraged.  And
11   what that means, unfortunately, is that black students in
12   South Carolina are overwhelmingly disproportionately impacted
13   by these negative impacts of the law.  The undisputed record
14   in the case shows that black students are over six times as
15   likely as their white classmates to be charged with the
16   criminally disorderly or boisterous in some places.  That's
17   even further disparate in Greenville County.  Students are 14
18   times more likely to be charged.  And similarly under the
19   Disturbing Schools law, black students were about four times
20   as likely across the State as their white classmates to be
21   charged with these offenses.

22         So, I just want to conclude by emphasizing the real
23   harmful and negative impact that these unconstitutionally
24   vague laws have on the lives of students in South Carolina.
25   And for that reason we're asking that the Court grant the

1    Plaintiff's Motion for Summary Judgment and issue the relief

2    requested in our Amended Complaint.

3              **THE COURT:**  So, let me ask this --

4              **MR. SMITH:**  I'm sorry.  Go ahead, Your Honor.

5              **THE COURT:**  Okay.  Let me ask this question:  Since

6    Defendant is correct that *City of Landrum* and *In re Amir*

7    qualify application of the laws, do you maintain that the laws

8    are unconstitutional even with the guidance in these cases?

9              **MS. HINGER:**  Yes, Your Honor.  We do.

10             So, in the first instance, we would say that these

11   laws do not create a sufficient limiting instruction.  In the

12   first place, the *Amir* case as it relates to the Disturbing

13   Schools law, the Fourth Circuit here has previously held that

14   this law doesn't create a limiting construction that would

15   foreclose the Plaintiffs' claim.  In fact, that case used the

16   term "disturbing learning environment" exactly one time in the

17   context of its discussions of the law's overbreadth.  The

18   Court in *Amir* did not reach the question of vagueness and did

19   not in any way construe a limiting construction that would

20   address the law's vagueness.  But moreover, even if the Court

21   had attempted to do that, its limiting construction failed.

22   As the Supreme Court said in *U.S. v Johnso*n, the failure of a

23   limiting construction to confine enforcement may be evidence

24   of a law's vagueness.

25             Here we have opinions which state and remain

unreversed that regardless of whether a student or faculty are present, that the Disturbing Schools law can be enforced, and that the law is without limitation to the time of day or year when school is in session.

So, that evidence in addition to facts such as the application of the law in a parking lot of a college-owned apartment complex make clear that the law certainly has not been merit, or if it had, such a merit in construction has failed to limit its application to actual disruption.

But beyond that, finally, to conclude, a limit to disturbing the learning environment would not sufficiently hear the vagueness of the law as the Plaintiffs' arguments have set out. What constitutes disturbing by a student in a school is not sufficiently clear and remains necessarily a subjective judgment just as the term to be annoying in *Cincinnati V Coates* was found by the Supreme Court to rely solely on the subjective determination of a police officer whether a student's disturbing -- is disturbing in the school context would be unconstitutionally vague.

And if I can turn just for a moment, Your Honor, to the *Ferret* decision as well. While there is no dispute that the use of profanity or curse words is protected by the First Amendment from criminal penalties unless it constitutes fighting words, and that the South Carolina Supreme Court had likewise held that to be the case, the problem when the

1     disorderly conduct law is applied in a context of schools to

2     students, is that that limiting construction is not followed

3     and hasn't applied in schools.

4             We've seen in numerous instances the use of a curse

5     word cited as the basis for arresting and charging a student,

6     including an instance where the officer told the student that

7     it was illegal to curse in public.  Moreover, even if those

8     terms themselves were not found to be vague in the law, and we

9     argue that they are, the disorderly conduct law beyond this

10    fails to indicate what type of behavior would need to

11    accompany those words in order for them to constitute fighting

12    words, particularly in the education context and uttered by a

13    student.  And second, the remaining language of the law

14    "disorder" and "boisterousness" further can be applied and

15    construed to reach protective speech and expression.  And so

16    for all of those reasons, we similarly maintain that the

17    *Ferret* decision is not dispositive in the same way, but the

18    In re *Amir* decision is not dispositive of the claims in this

19    case.

20            **MR. SMITH:**  Your Honor, Emory Smith.  If I may

21    respond.  There are a number of points that -- and I'll take

22    the last ones first about the limiting instruction.

23            I think it is very clear in the *Amir* decision, the

24    *Surat* decision and the others cited, that verbal remarks can

25    not be criminally punished except where fighting words.  And

1   that would include yelling in the cases that I referenced.

2   And it's very clear.  I'll read you from the -- if you don't

3   mind, from the *Amir* decision.  It says -- this was regarding

4   the Disturbing the Schools law.  And although it was the

5   context of an over breadth challenge rather than vagueness,

6   the Court's limitations are not limited to that.  It says:

7   The statute does not explicitly prohibit any type of gathering

8   or expression except those which disturb the learning

9   environment in South Carolina schools.

10          That's clear.  That's a clear limit.  And then it

11  says:  Finally, the statute is limited in the type of conduct

12  that may be punished.  The disturbance or interference is

13  required to be done willfully or unnecessary.  So, therefore

14  the limitation is that it must willfully or unnecessarily

15  disturb the learning environment.

16          And it's also clear from the *Surat* decision and

17  others that fighting -- that verbal conduct other than

18  fighting words cannot be prohibited.  These are limitations

19  that the Court has found in the statute, and so they apply

20  here.

21          They -- I referenced one case about an incident

22  report about curse words.  The fact that a law enforcement

23  officer may have misapplied a statute does not make it vague.

24  The *Martin* case that we've cited said, and I have this quote

25  in our brief, "A difference of opinion among judges of law

1  enforcement does not make a statute unconstitutionally vague."

2  Of course, as Your Honor knows, and as the Plaintiffs'

3  attorneys know, people are sometimes charged under not only

4  these statutes but others, and after review it's determined

5  that the charges should be dismissed. And that happens. But

6  that -- the dismissal does not mean that the statute itself is

7  bad or that there's a problem with law enforcement, or that

8  there is a problem here with vagueness. And we pointed out

9  report after report after report, including some of those

10  cited by Plaintiff in part, but not in full, that show very

11  clear criminal conduct, and that enjoining these laws would

12  remove a tool of law enforcement that has been applied.

13          Just two other points briefly. This is -- we

14  addressed the alleged disparity and enforcement as to numbers,

15  as to African-American students versus other students.

16  Plaintiffs cite the numbers, but they provide no evidence that

17  there is a racial animus, discriminatory intent associated

18  with it, or that it has anything to do with their vagueness

19  claim. It's just a raw statistic that proves nothing, and

20  they made no claim of discrimination in their Amended

21  Complaint. So, we don't know what the reasons for that --

22  what the reasons are for that. They don't explain it. And so

23  it's just speculative and not rooted in any allegations in the

24  complaint.

25          And finally, going back to what Your Honor brought

1    up at the beginning of the hearing today when you mentioned

2    the fact that the Disturbing the Schools statute had been

3    amended, and what the Plaintiffs were asking this Court to do,

4    and what the Court could do.  I pulled up the Amended

5    Complaint.  And although the initial parts of the Amended

6    Complaint refer to the amendment in 2018 that -- as

7    eliminating the need for injunctive relief as to the

8    Disturbing the Schools law, the prayer for relief at the end

9    was not apparently amended, and they ask that the Disturbing

10   the Schools statute be declared unconstitutional, but it

11   doesn't say which one, and ask that it be permanently

12   enjoined, but it doesn't say which one.  And so that is -- the

13   prayer for relief does not reflect the fact that the law was

14   amended in 2018, and does not reflect the initial parts of the

15   complaint.  And as I said and as I think Plaintiffs agree,

16   they're not asking the Court to enjoin the law, the current

17   law, and they're not asking that the current law be declared

18   unconstitutional.  They are maintaining their request for

19   retroactive expungement, and we disagree with that.

20          And I would -- we haven't argued about expungement.

21   I requested in our filings that if the Court -- although we

22   believe the law should be upheld, if the Court determined that

23   they are invalid, we would ask to be further heard on

24   expungement, particularly, Your Honor, in these incident

25   reports that we cited showing clearly criminal conduct on

1    multiple occasions.  To grant retroactive expungement relief

2    would wipe out any convictions of those people for that

3    conduct or any other conduct.  And that really goes more to

4    the practical effect of this.  We've given legal reasons

5    regarding expungement in our briefings, and I won't go over

6    all of that now.  But we would just ask for the opportunity to

7    be heard should that be necessary before any such relief were

8    granted.

9           That's all I have to say, unless Your Honor has any

10   questions.

11          **THE COURT:**  All right.  Thank you, very much.

12          **MS. HINGER:**  Your Honor, this is Sarah Hinger again

13   for the Plaintiffs.

14          If I could just point out briefly in response, I

15   think all of these points are addressed in our briefing, but I

16   did want to note that on the question of expungement and

17   available remedies, the Court has addressed this issue.  The

18   Court's order is available at ECF 185, which we refer to the

19   parties' relevant briefing on the issue.  And as set forth in

20   our briefing and in argument today, that the request for

21   injunctive relief against the ongoing use and effect of

22   criminal records generated pursuant to unconstitutionally

23   vague terms, I think the record stands for itself in

24   demonstrating the ways in which these laws are and can be

25   applied in overly broad ways.  And as the standard of

1 vagueness makes clear, a law is unconstitutionally vague if it

2 fails to provide notice to the ordinary person, in this case a

3 school child, of what they should do to comport themselves

4 with the law and avoid criminal prosecution.  And separately

5 and independently, if it allows or even encourages

6 discriminatory enforcement.  Certainly the records show that

7 these laws make that a possibility at the very least.  And it

8 is directly relevant, their application, and disparate

9 application to black students as well as to students with

10 disabilities in this case, and to students who are engaged in

11 First Amendment protected conduct.  I think the remaining

12 issues are addressed in our brief.

13        **THE COURT:**  All right.  Thank you, very much. I

14 don't have any additional questions.  I appreciate you being

15 available today to talk about this and go over some questions

16 the Court had, and also point out issues you want the Court to

17 look at with regard to your Summary Judgment Motion.  So,

18 unless you have anything else, I think that will be it.

19        **MR. SMITH:**  Thank you, Your Honor.  I appreciate you

20 giving us this time today.

21        **THE COURT:**  All right.  Thank you, very much.

22        **MS. HINGER:**  Thank you, for the Plaintiffs.  Thank

23 you, Judge.

24        *(Court adjourned at 12:29 p.m.)*

25


Michele Becker, RMR, CRR, RPR
US District Court
District of South Carolina

1                           *CERTIFICATE*

2       *I,  Michele E. Becker, certify that the foregoing is*

3       *a true and correct transcript from the record of the*

4       *teleconference proceedings in the above-entitled*

5       *matter to the best of my ability.*

6

7   */s/  Michele E. Becker              Date:  12/29/2022*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25